UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANIEL BRYAN, a seaman,

    Plaintiff,

    v.

ICICLE SEAFOODS, INC., an Alaska corporation, et al.,

    Defendants.

CASE NO. C06-231RSM

ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Daniel Bryan filed this complaint pursuant to the Jones Act, 46 U.S.C. § 688, seeking damages for injuries he received while working in defendant's employ on three different ships. The matter is now before the Court for consideration of defendant Icicle Seafoods' motion for partial summary judgment as to two of the three injuries asserted in the complaint. Dkt. # 35. Plaintiff has opposed the motion. For the reasons set forth below, defendant's motion shall be granted in part and denied in part.

FACTUAL BACKGROUND

Beginning in 2003 and into May of 2005, plaintiff worked on three different processing ships owned by defendant Icicle Seafoods: the DISCOVERY STAR, the ARCTIC STAR, and the BERING STAR. In his complaint, plaintiff alleges that

    [o]n or about July 27, 2003, while on navigable waters, plaintiff suffered severe injuries

ORDER ON MOTION FOR SUMMARY JUDGMENT - 1

> while in the service of the defendants' vessel the DISCOVERY STAR. Plaintiff's injuries include, but are not limited to, severe injuries to his arm/wrist/hand.
>
> . . . .
>
> Upon Mr. Daniel Bryan's return to employment with Icicle Seafoods, Mr. Bryan was in service of the defendants' vessel the ARCTIC STAR where M. Bryan suffered aggravation to the injuries he sustained while on board the DISCOVERY STAR.
>
> . . . .
>
> On or about May 6, 2005, while on navigable waters, plaintiff suffered injuries while in the service of the defendants' vessel the BERING STAR. Plaintiff's injuries include, but are not limited to, severe aggravation to Mr. Bryan's injuries he sustained while on board the DISCOVERY STAR.

Complaint, Dkt. # 1, ¶¶ 3.6, 3.8, 3.10. Plaintiff alleges in each instance that these injuries were caused by the negligence of his employer and/or the unseaworthiness of the vessels. Complaint, ¶¶ 3.7, 3.9, 3.11.

Through plaintiff's responses to discovery, defendants determined that plaintiff alleges three separate injuries: an injury to his wrist in 2003, incurred while working aboard the DISCOVERY STAR; an injury to his knee in 2004, incurred while working aboard the ARCTIC STAR; and an injury to his elbow, incurred in 2005 while working aboard the BERING STAR. Defendants have moved for summary judgment as to the latter two injuries, the knee and the elbow, contending that plaintiff has insufficient evidence to show that these injuries were sustained as a result of working on defendants' ships.

## DISCUSSION

Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 2

burden, the opponent must set forth specific facts showing that there remains a genuine issue for trial. F.R.Civ. P. 56(e).

A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the evidence is merely colorable or is not significantly probative, summary judgment may not be granted. *Id.* at 249-50.  It is not the court's function at the summary judgment stage to determine credibility or to decide the truth of the matter. *Id.* Rather, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

Plaintiff filed this suit pursuant to the Jones Act, 46 U.S.C. § 688, and general maritime law. The Court has jurisdiction of the matter pursuant to 28 U.S.C. § 1331. Venue is proper in this district due to defendants' presence here.

The Jones Act provides that "any seaman who shall suffer personal injury in the course of his employment may . . . maintain an action for damages at law, . . . and in such action all statutes of the United Stated modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply. . . ." 46 U.S.C.§ 688.  Plaintiff was a seaman within the meaning of the Jones Act during the relevant period here.

In order to prevail on his negligence claim under the Jones Act, plaintiff has the burden of proving, by a preponderance of the evidence, that the defendant was negligent, and that such negligence was the cause of injury to the plaintiff.  Negligence is a cause of an injury if it played any part, no matter how small, in bringing about the injury, even if the negligence operated in combination with some other cause. *In re Hechinger*, 890 F. 2d 202, 208 (9th Cir. 1989); *cert. denied,* 498 U.S. 848 (1990); *Ribitzki v. Canmar Reading & Bates, Ltd. Partnership*, 111 F. 3d 658, 662 (9th Cir. 1997).  However, the mere occurrence of an injury is not alone sufficient to create liability.  The plaintiff must show that the employer's conduct fell below the required standard of care. *Gautreaux v. Scurlock Marine, Inc.,* 107 F. 3d 331, 335 (5th Cir. 1997) (*en banc*).

In order to prevail on his claim of unseaworthiness under the Jones Act, plaintiff has the burden of

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 3

proving by a preponderance of the evidence that the DISCOVERY STAR, ARCTIC STAR, and BERING STAR were unseaworthy, and that the unseaworthy condition was a cause of an injury to plaintiff. A vessel is seaworthy if the vessel and its parts and equipment are reasonably fit for their intended purpose, and operated by a crew which is reasonably adequate and competent for the work assigned. Conversely, the vessel is unseaworthy if the vessel or any of its equipment is not reasonably fit for its intended purpose, or if its crew is not reasonably adequate or competent to perform the work assigned. *Ribitzki*, 111 F. 3d at 664. Unseaworthness is a cause of injury if it played a substantial part in bringing about injury to the plaintiff. *Ribitzki*, 111 F. 3d at 665.

A vessel owner has a duty to provide adequate safety equipment for the vessel. However, the vessel owner is not required to furnish an accident-free ship. The vessel owner is not required to have the best parts and equipment, nor the finest of crews; it is required to have what is reasonably proper and suitable for its intended use. *Mitchell v. Trawler Racer*, 362 U.S. 539, 550 (1960); *Lee v. Pacific Far East Line*, 566 F. 2d 65, 67 (9th Cir. 1977).

Defendant has moved for summary judgment on the basis that plaintiff's evidence fails to raise any triable issues of fact as to the knee and elbow injuries. The two shall be discussed separately.

1. Knee Injury

Plaintiff asserts that on some unspecified date during the 2004 crab season, when he was working aboard the ARCTIC STAR, he injured his right knee. He claims that his kneecap "popped out" in response to the great stress placed on it while he was moving 400-pound carts[1] across the deck, that he hobbled to the safety officer and then pushed the kneecap back into place himself, and that the safety officer gave him pain medication, "Soma." Dkt. # 40, Exhibit 5: Deposition of Daniel Bryan, pp. 110-111. He acknowledges that he did not make any written report of this injury, and did not at any time

---

[1] There is no evidence in the record of the actual weight of the cart; this is plaintiff's estimate. At deposition, he stated, in response to the question how he knew the cart weighed 400 pounds, "Well, just doing the simple math of the way—how much the cart weighed to begin with. It's a steel or —it's steel frame, what's got four—eight baskets in it. And the baskets weigh—oh, I can't—30 pounds. So you just do the math. And they came out to 400 pounds approximately." Deposition of Daniel Bryan, p. 113.

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 4

seek medical treatment for this knee injury. *Id*. at 112, 116. The Court notes that this knee injury was not even mentioned in the complaint; the only injury alleged from plaintiff's employment aboard the ARCTIC STAR was an aggravation of his previous "arm/wrist/hand" injury from the DISCOVERY STAR. Complaint, ¶ 3.8.

Even when this deposition testimony—the only evidence offered by plaintiff—is viewed in the light most favorable to him, it wholly fails to raise an issue of fact for the jury as to whether the defendant was negligent, and that such negligence was the cause of injury to the plaintiff. Plaintiff's statement that his knee "popped out" is not in itself evidence of injury; he did not consult a doctor regarding this condition and there is no medical testimony explaining that a "popped out" knee is actually an injury, or what the medical consequences in terms of pain or disability would be. In the complete absence of any medical evidence of injury, or expert testimony establishing that the weight of the cart could cause such an injury, the Court can find no triable issue of fact with respect to either negligence or unseaworthiness of the ARCTIC STAR arising from the alleged knee injury. Defendants' motion for summary judgment as to the claim of knee injury shall therefore be granted.

2. Elbow Injury

In 2005, plaintiff was employed aboard the BERING STAR as a production manager. He alleges that his left elbow was injured at the end of the season when he was "breaking pans" on the production line. His last date of work was May 9, 2005, but he did make a written report of injury until June 24, 2005. Heikkila Declaration, Exhibit N. In the report, he states that he injured his "elbow/forearm" by "loading Freezer Pans onto 'Breakout' Table during Herring Season." *Id*. The safety officer who signed the report noted that plaintiff did not report any pain until approximately one month after the last "date of exposure" (meaning his last day of work). *Id*.

Plaintiff sought medical treatment on July 5, 2005. He was seen by William Wagner, M.D., who had previously treated plaintiff's wrist injury. Dr. Wagner stated his impression of "[l]eft lateral epicondylitis, work-related to his significant lifting doing fish processing." Heikkila Declaration, Exhibit O. He recommended a counterforce brace and occupational therapy. *Id*. Plaintiff returned to see Dr.

ORDER ON MOTION FOR SUMMARY JUDGMENT - 5

Wagner approximately two weeks later, on July 21, 2005. At that visit, Dr. Wagner noted pain and tenderness in both elbows:

> Dan Bryan returns today. His history is unchanged from when I last saw him. His lateral elbow pain is feeling better. He notes on the tips of his elbow he is having increased pain when he was moving all the fish boxes and was resting it down on hard surfaces.[2] He has mild swelling over the olecranon bursas bilaterally with tenderness that is marked over the olecranon bursas.

Heikkila Declaration, Exhibit P. Dr. Wagner stated his impression was bilateral olecranon bursitis. *Id*. Since plaintiff's allegations identify only the left elbow /forearm injury, this bilateral condition is not part of his claim.

More than a year later, on October 5, 2006, Dr. Wagner noted "ongoing pain" in plaintiff's left elbow, especially with lifting heavy weights. Heikkila Declaration, Exhibit T. An MRI revealed a complete rupture of the lateral ulnar collateral ligament. *Id*. Dr. Wagner stated that he felt "that this is the symptom that he has been having all along although presented initially as a lateral epicondylitis." *Id*. At his deposition, Dr. Wagner testified that this type of injury is more commonly caused by a traumatic event like a fall than by repetitive heavy use. Heikkila Declaration, Exhibit L, Deposition of William Wagner, M.D., p. 32. However, he opined that the ligament tear was more probably than not related to plaintiff's 2005 elbow complaint, which he originally diagnosed as epicondylitis. *Id*., p. 38.

Defendants have moved for summary judgment as to this claim on the basis that plaintiff has produced no evidence of negligence on their part that could have caused his injury. This assertion is based upon the fact that plaintiff held a managerial position on the BERING STAR and was not required to work on the fish processing line lifting heavy pans. In opposing summary judgment plaintiff points to deposition testimony in which he explained that he did this work because his boss Brian "wanted to see me down in the factory moving stuff, picking stuff, doing fish, breaking crab, whatever." Dickman Declaration, Exhibit 5, Deposition of Daniel Bryan, p. 119. He further testified that he gave breaks to the crew in this way, and helped production. *Id*. Although he could not identify any specific direction by

---

[2] There is no evidence that plaintiff was working on defendant's ships at this date, so this reference to plaintiff currently ("is") having increased pain" when he **was** moving fish boxes is unclear.

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 6

management that he work on the processing line, he "was under tremendous pressure to do it." *Id.*, p. 120.

Defendants have cited to a seaman's injury case from this district for the proposition that "[m]ere communication of time pressure is not sufficient for a reasonable jury to find employer negligence." *American Seafoods v. Jerzy Nowak*, C01-161MJP, Dkt. # 29, p. 4. However, plaintiff's testimony involves more than "mere communication of time pressure"; he stated that he was expected to help on the processing line to "lead by example" and keep production levels up. Deposition of Daniel Bryan, pp. 120-121. Viewing this testimony in the light most favorable to him, the Court finds that plaintiff has presented an arguable issue of fact for the jury as to the employer's negligence under the Jones Act. Defendants' motion for summary judgment on this claim must accordingly be denied.

3. Additional Evidence

The Court notes that in presenting the motion for partial summary judgment, defendants put forth evidence and arguments regarding plaintiff's credibility, all of which is disputed by plaintiff. The Court on summary judgment cannot make credibility determinations, or to decide the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Rather, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. These are thus matters for the jury to determine.

CONCLUSION

As plaintiff has come forward with no evidence to support his claim that negligence of his employer or unseaworthiness of the ARCTIC STAR caused a knee injury, defendants' motion for summary judgment regarding that claim is GRANTED. As plaintiff has put forth evidence to create an arguable issue of fact as to the cause of his elbow injury, defendants' motion for summary judgment as to that issue is DENIED.

DATED this 21st day of May, 2008.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTION FOR SUMMARY JUDGMENT - 7